IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | |
| Plaintiff, | : | |
| v. | : | Criminal Action No. 16-46-RGA |
| KEENAN GIBSON, | : | |
| Defendant. | : | |

**MEMORANDUM ORDER**

Defendant has filed various post-trial motions. (D.I. 149, 150, 159, 168). In connection with these, both parties have filed further papers. (D.I. 153, 156, 162, 165).

Two of the motions are clearly timely. One seeks a new trial in relation to issues raised concerning potential defense witness Andre Strother. (D.I. 149). The other seeks a judgment of acquittal, or, in the alternative, a new trial based on the lack of evidence in relation to the element of possession of a firearm. (D.I. 150).

The Judgment of Acquittal Motion (D.I. 150).

I decide Defendant's request for a judgment of acquittal by reviewing the evidence in the light most favorable to the Government "to determine whether any rational trier of fact could have found proof of guilt beyond a reasonable doubt based on the available evidence." *United States v. Smith*, 294 F.3d 473, 476 (3d Cir. 2002).

The point that Defendant presses is whether there was sufficient evidence that he possessed the firearm that was necessary for conviction on the two firearms counts. (D.I. 150 at 1-5).

1

There was sufficient evidence. When police executed the search warrant on March 18, 2016, Defendant was the only person in the two-bedroom apartment. (D.I. 145 at 41, 50, 53). One of the two bedrooms was that of a woman. (*Id.* at 55). No evidence was seized from it. Defendant was seized "coming out of the bathroom." (*Id.* at 39, 40-41). It was the only bathroom. (*Id.* at 53). In the bathroom, in a cabinet under the bathroom sink, police found the gun, a Ruger SR9C 9 mm loaded with ten rounds of Hollow Point ammunition, and, in the bathtub, a cell phone belonging to Defendant. (*Id.* at 84-87). In the second bedroom, police found a wallet containing Defendant's Delaware identification card (*id.* at 58-59),[1] a speed loader (*id.* at 60, 62), plastic bags and a digital scale (*id.* at 60-61), a Ruger 9 mm magazine loaded with Hollow Point ammunition (*id.* at 63-64), and a shoulder holster for a firearm (*id.* at 64-66). In the bedroom's closet, police found about 940 bags of heroin, some marked "Black Poppy" and some marked "Ghost" (*id.* at 67-68, 73), about 350 rounds of 9 mm ammunition (*id.* at 66-67), and a Ruger gun lock (*id.* at 68-69). There was additional 9 mm ammunition and heroin, some marked "Volvo," some marked "Batman," some marked "Ghost," and some marked "Black Poppy" (*id.* at 78-80) in a bag in the hallway closet, outside of the second bedroom. (*Id.* at 78). From Defendant's person, police recovered sixteen individual bags of heroin, marked "Ghost." (*Id.* at 91-92). The phone seized from the bathtub contained pictures of Defendant's kitten in the second bedroom the day before. (D.I. 145 at 89; D.I. 146 at 322-23, 333-36). The Government presented expert testimony about why drug dealers prefer handguns and that they do not usually purchase their guns from a gun store. (D.I. 146 at 401-02).

---

[1] The police also found a "healthcare coverage document" of Defendant's on a coffee table in the living room. (D.I. 145 at 83).

2

From the evidence, the jury could reasonably infer that the second bedroom in the apartment was Defendant's; that Defendant had a substantial quantity of heroin, which was for sale; and that he had a firearm to protect his business. That was more than enough to prove possession, that is, to establish the ability and intent to exercise dominion and control over the firearm. Defendant argues that the Government presented nothing more than evidence of "mere proximity," but that is not an accurate characterization of the evidence when the evidence is viewed in the light most favorable to the Government.

Thus, since there was more than sufficient evidence, I deny the motion for judgment of acquittal. To the extent Defendant seeks a new trial based on the quantity of evidence relating to possession of the firearm,[2] I deny that motion too.

<u>The New Trial Motion (D.I. 149)</u>.

I review Defendant's request for a new trial in light of Rule 33's instruction that I should "grant a new trial if the interest of justice so requires."

The firearm at issue in this case was purchased by Andre Strother a year before it was seized by the police. (D.I. 146 at 439).

The trial at which Defendant was convicted was his second trial. A previous trial in February 2019, during which Defendant exercised his constitutional right to represent himself in the middle of the trial, resulted in a mistrial after the jury was hung. In the first trial, no one tried to call Andre Strother as a witness. But his name was mentioned, as the arresting officer agreed that "Andre Straker" had purchased the firearm, and that the officer did not know whether Straker lived at the apartment. (D.I. 124 at 154-57).

---

[2] Defendant makes no separate argument in the request for a new trial based on the quantity of evidence and makes no reference to the standard under Rule 33 for granting new trials. (*See* D.I. 150 at 1, 6; *see also* D.I. 156 at 1-4).

In preparation for the second trial, Defendant requested any statements of 'Sathers/Sothers." (D.I. 116). Government agents interviewed Andre Strother on May 10, 2019. (D.I. 118 at 4 & n.3). By May 20, a report of interview had been prepared and disclosed to the defense, and the Government represented that it did not intend to call Strother at the retrial, due to concerns about credibility and the Fifth Amendment. (*Id.*).

The Court held a brief teleconference with counsel on May 28th to address administrative matters relating to making sure that a subpoena could be timely served on Strother, either by ATF agents or the United States Marshal. (D.I. 173).

The Court entered an order on May 29th directing that Defendant provide a trial subpoena to the United States Marshal for service. (D.I. 122).

The Court held a pretrial conference on May 31st. (D.I. 155). The Government reported that ATF agents had served the subpoena on Strother, that a recording of a conversation between Strother and the agents had been made and disclosed, and that a magistrate judge had appointed an attorney to represent Strother. (*Id.* at 2-3). The AUSA summarized the relevant statement of Strother as, "he owned the gun and brought that gun into the apartment that day. . . . He . . . left the gun [there when he left]. . . . [H]e's saying that he owned the gun and that he brought the gun into the apartment within a day or two of the search warrant. . . . [H]e was a heroin addict at the time. He was purchasing heroin from the defendant." (*Id.* at 4).

At the end of the first day of trial on June 3rd, Strother and his attorney appeared. (D.I. 144 at 13-20). The attorney said Strother intended to selectively invoke his Fifth Amendment rights. There was a colloquy about the stated plan, with the result that counsel for Strother stated that he would have to consider further whether the intended plan was best. (*Id.* at 17-18). It was expected that counsel and Strother would reconvene the next day at noon to consult at Court.

4

On June 4th, Strother did not appear at the appointed time. (D.I. 145 at 166). When he was clearly overdue, the prosecutor sent an agent "to go knock on the door of his house." (*Id.* at 169). Strother eventually appeared, and the final proceeding involving him occurred. (*Id.* at 243-50, 252-61, 285-86). He was sworn, took the witness stand, and asserted the Fifth Amendment to every relevant question. (*Id.* at 253-60). I ruled that the invocation of the Fifth Amendment was proper and excused him. (*Id.* at 260, 285).

Essentially, Defendant argues two different issues in relation to Strother, issues that the Court of Appeals refers to as the "prosecutorial misconduct theory" and the refusal to immunize theory. First, Defendant states that the Government violated due process by "threaten[ing] and intimidat[ing] Andre Strother to invoke the [Fifth] Amendment." (D.I. 149 at 1). Second, Defendant argues that I should have required the Government to immunize Strother so that he could testify as a defense witness. (*Id.* at 2-4).

The two lines of caselaw are summarized in an en banc Third Circuit case.

> The prosecutorial misconduct theory . . . holds that the Government violates a defendant's due process right to a fair trial if it acts with the deliberate intention of distorting the factfinding process, such as by interfering with a defense witness through threats and intimidation. Because it looks to Government action, this test is difficult to apply when the Government declines to grant immunity to a defense witness. *Government of the Virgin Islands v. Smith*, 615 F.2d 964 (3d Cir. 1980), crafted a new five-part test to address instances of Government refusal to immunize, with the aim of ensuring that a defendant is able to present a defense free from improper Government intrusion.
> We recognized that when the Government declines to seek immunity for a defense witness, it is difficult for a defendant to prove that the prosecution acted with the deliberate intention of distorting the factfinding process. Thus in *Smith* we also created a new five-factor test that focused on whether the defendant is prevented from presenting exculpatory evidence which is crucial to his case.
> The five factors considered in *Smith* remain analytically helpful, as they capture those situations where the Government, for tactical reasons, has used its power to threaten prosecution and withhold immunity to keep exculpatory and essential testimony from trial for no strong countervailing reason. This test fleshes out, and thus complements, the prosecutorial misconduct theory's metric of deliberate distortion. For good reason this test also requires a more exacting showing than does the broader misconduct test. When a defendant alleges that the Government's refusal to immunize resulted in an unfair trial, he

5

> is challenging its statutory discretion in his case and possibly others. If the defendant can show, as a *prima facie* matter, a witness's testimony is available, clearly exculpatory, and essential—in effect showing that the prosecutor's actions have impaired the ability to present an effective defense—we will consider the due process concerns raised regarding the Government's discretion to grant or deny immunity. The five-factor test aids this inquiry for prosecutorial misconduct, and we continue its use.
>
> To prove a due process violation on the basis of the Government's refusal to immunize a defense witness, the defendant must show the following five elements. [1] Immunity must be properly sought in the district court; [2] the defense witness must be available to testify; [3] the proffered testimony must be clearly exculpatory; [4] the testimony must be essential; and [5] there must be no strong governmental interests which countervail against a grant of immunity.

*United States v. Quinn*, 728 F.3d 243, 257-59, 261-62 (3d Cir. 2013) (en banc) (substantially edited for readability).

Prosecutorial Misconduct.

Defendant develops this argument in his motion. (D.I. 149 at 4-9). He cites nothing in the record of the trial in support of this argument. Thus, the prosecutorial misconduct theory is being raised for the first time in the new trial motion. There is very little evidentiary basis for it.

Defendant cites a Report of Interview of Strother on May 10, 2019. (*Id*.at 5). The Government has provided the ROI. (D.I. 153-1, Exh. A). Defendant quotes the ROI, which states at the end, "[Special Agents] also informed [Strother] about possible prosecution due to his felonious purchase of firearms as a drug user." (*Id.* at 2).[3] Defendant also refers to the audio conversation of May 29, 2019, during which ATF agents served Strother with a trial subpoena. Defendant states that the audio recording shows the Special Agent twice telling Strother "he can plead his [Fifth] Amendment privilege to avoid testifying . . . ." (*Id*. at 5). The Government has provided the audio interview and a rough transcript of it. (D.I. 153-2, Exh. B; D.I. 153-3, Exh. C). The conversation is more nuanced than Defendant's rendition of it. According to the

---

[3] As of May 10th, there is no evidence that Defendant intended to call Strother as a witness in the second trial.

6

transcript (which is undisputed in Defendant's reply, *see* D.I. 156 at 8 (referring to "the transcribed colloquy provided by the Government")), the Special Agent served the subpoena and explained Strother's obligation to show up for trial. Strother raised the topic of the previous interview and what the special agent had documented in the ROI as the "felonious purchase of firearms as a drug user." After some discussion of the circumstances, the Special Agent tells Strother, "I'm not trying to like accuse you of anything right here. . . . I'm just saying that when you testify you're gonna, they will provide you with counsel. If you, cause you have the [Fifth] Amendment right not to incriminate yourself . . . when you go up to testify about it . . . you know at trial in front of a Judge and everyone. So understand what you told us, what you told us the other day, like we explained to you, that's a felony. So you, just so you, just so you um, just you know what is going on. And you know your rights. But as for the subpoena goes you have to show up to Court for the testimony. So, but once like everything will be explained to you there. You always have your [Fifth] Amendment right. So that's, so that will be fully protected of course." (D.I. 153-2, Exh. B, at 6-7).

    The special agent brought up both the appointment of counsel and Strother's Fifth Amendment rights in response to Strother raising concerns about the crime that he may have committed in 2015. The special agent emphasized he had to show up for court, and that the issues would be worked out there. I cannot conclude that there is any showing that the Government intended to distort the factfinding process (*see* D.I. 145 at 283), and, indeed, it appears that the Government's main concern was getting Strother to show up for Court. (*See id.* at 280).

    I think it is also difficult to find an intent to distort the fact-finding process when the Government obtained independent counsel for the witness.

Thus, I conclude there is no basis for granting a new trial under the prosecutorial misconduct theory.[4]

Refusal to Immunize.

The Government chose not to seek immunity for Strother. Thus, there is an issue about whether there was a due process violation.

To repeat, to show a due process violation, Defendant must show: "[1] Immunity must be properly sought in the district court; [2] the defense witness must be available to testify; [3] the proffered testimony must be clearly exculpatory; [4] the testimony must be essential; and [5] there must be no strong governmental interests which countervail against a grant of immunity."

The first two elements were uncontested at trial (D.I. 145 at 262) and are uncontested now. The Government raised the issue of immunity for Strother. (*Id.* at 260-61). The issue having been raised, Defendant requested that Strother be immunized. Strother was present at the trial. The Government did not contest the "essential" element at trial either. (*Id.* at 279).

The Government argued that Strother's testimony was not clearly exculpatory, and that that there was a strong governmental interest, for three reasons, in not granting immunity. (*Id*. at 262-65). On these two issues, I ruled at trial (based on an understanding that Strother's testimony would be that he was living at the residence, the gun was his, he had it the day before the search warrant, and that he went back to get it the day after) that the testimony was "clearly exculpatory, though, it's not 100 percent exonerating by itself." (*Id*. at 279). I ruled at trial that

---

[4] In a different context, when Defendant asked for a mistrial, I noted that the claim of bad faith or improper motive on the part of the Government "would be really completely inconsistent with the way they've presented evidence in this case." (D.I. 146 at 444). That was my impression then, and it remains my impression. It is not easy to prosecute a case against a Defendant who is representing himself. But I thought the prosecutors appropriately balanced their duty to represent the United States without unfairly taking advantage of Defendant's lack of legal training.

there was a strong governmental interest in not granting immunity. (*Id*. at 285). Thus, I permitted the trial to continue, noting that the issue of whether the decision not to seek immunity for Strother denied Defendant due process would be reviewable if there was a conviction.[5] (*Id*.).

One difficulty with the proposed Strother testimony is that there is very little to go on as to what it was going to be. The Government had described what it thought it would be at the pretrial conference. There was an ATF ROI which purported to summarize what Strother had said during the May 10 interview.[6] Defendant could not say what his witness was going to say, other than, "All I want him to confess to is that he, in fact, left the firearm – his firearm that he owned and possessed, he left it at the residence. The technicalities and specificities about how, when, where, what color, what time, what minute exactly is somewhat irrelevant." (*Id*. at 273). "[Strother] will say that the day before the search warrant, he brought the gun to [2211 N. Washington Street], and he left it there." (*Id*. at 275).

While at trial I said I thought the proposed testimony was "clearly exculpatory," I have had some time to reflect on that statement. The proffer that Strother would say he brought the

---

[5] In hindsight, I am not sure whether procedurally I should have entertained the question of immunity in the middle of the trial. As the Court of Appeals has noted, I could not compel the Government to immunize a witness. *Quinn*, 728 F.3d at 260. All I could do is dismiss the charges unless the witness was immunized. *Id*. Here, the issue of immunity was brought up during the Government's case-in-chief. The question of whether the testimony is "clearly exculpatory" and "essential" is, in many cases, probably not something which can be decided at that stage of the proceeding. Here, I had the benefit of this being the second trial of the issues, but, of course, there was nothing to compel either the Government or Defendant to repeat what they had done in the first trial. But now, in a post-trial motion, I have the benefit of a complete record (and the same record the Court of Appeals will have if there is an appeal).

[6] The most relevant portions of the ROI stated that Strother told the agents: (1) he purchased drugs from Defendant; (2) at the time of the search warrant, he was staying at the apartment with a woman who was his cousin and Defendant, and he was sleeping on the couch in the living room; (3) he had only stayed there one night, the night before execution of the search warrant; and (4) he had the gun with him in a brown paper bag in the living room of the apartment, along with his other possessions. (D.I. 153-1, Exh. A at 2).

gun to the apartment the day before and left it there is not clearly exculpatory. It does not explain the 350 rounds of 9 mm ammunition, the loaded magazine, the shoulder holster, the Ruger gun lock, or the speed loader. Defendant's proffer does not actually explain why the gun was left there. Was it left there by accident? Was it left there in trade for heroin? Was it left there for some other reason? Why was it found in the cabinet under the sink if he left it in a brown paper bag in the living room? The proposed Strother testimony does not contradict any evidence that the Government put on. The Government did not argue that Defendant was the owner of the gun. The Government did not argue that the gun had been in the apartment for any particular period of time. And, if Strother repeated what the special agent wrote in her report, it would be incriminating on the heroin charge. Given the way the drug and gun evidence was intermixed in the apartment, a direct statement that Defendant had sold heroin to Strother would have provided a basis for the government to argue that there was a business connection between Strother and Defendant that would explain how Defendant obtained the gun. In the end, Strother's purported testimony that he brought the gun to the apartment the day before and left it, without more, would not have helped Defendant. Indeed, due to the unanswered questions, it might have hurt Defendant's case more than it would have helped Defendant's case.

The "clearly exculpatory" standard is an "exacting" one. The Court of Appeals made this clear in *Quinn*:

> Testimony that is at best speculative, severely impeached by the witness's prior inconsistent statement(s), ambiguous on its face, or even if believed, would not in itself exonerate the defendant, is not clearly exculpatory.

*Quinn*, 728 F.3d at 262 (punctuation altered and citations omitted). I do not think the proposed testimony meets the "clearly exculpatory" standard. The essence of what Defendant proffered, that Strother brought the gun to the apartment and left it there, "even if believed, would not in itself exonerate the defendant." It offers nothing as to how the gun got to the cabinet under the

bathroom sink. It offers nothing as to what sort of interaction, if any, there was between Strother and Defendant. And it does nothing to explain the gun accessories, including the ammunition, the magazine, the holster, the speed loader, and the gun lock, being found in Defendant's bedroom, Defendant's bedroom closet, and the hall closet outside of Defendant's bedroom.

Defendant has not shown that Strother's testimony was clearly exculpatory. Thus, his motion for a new trial based on a due process violation fails.

I have also had some time to reflect on the other ruling I made, which was that the Government had a strong governmental interest in not seeking immunity because it did not want to request immunity for Strother given that the immunity would be for a felony gun crime. (D.I. 145 at 285). I started to doubt that ruling soon after I made it. (*See* D.I. 147 at 564). Part of the basis for that ruling was that I hesitated to second guess the Government's proffered reason for not wanting to immunize Strother. (D.I. 145 at 284-85). I note that the Court of Appeals in *Quinn* stopped its case-specific analysis once the Court decided the testimony was not clearly exculpatory. "The latter [not considering the assertion of a strong governmental interest] avoids our scrutinizing the Government's prosecutorial decisions unless necessary to do so." *Quinn*, 728 F.3d at 263. I believe that is the appropriate course here too, and thus I specifically do not rule on any of the justifications for not granting immunity, whether advanced at trial or in the briefing.

Thus, I deny the motion for a new trial.

<u>The Motion to Dismiss with Prejudice (D.I. 159)</u>

Any post-trial motions were due August 13, 2019. (D.I. 148). The motion to dismiss was filed on March 5, 2020. That is, it was filed at least six months too late. The Government pointed this out in its response. (D.I. 162 at 5). Defendant's reply (D.I. 165) does not address

11

timeliness, although the reply does suggest that the motion is not based on newly-discovered evidence. (*Id.* at 2).

If the post-trial motion is a motion for a new trial, and since it is not based on "newly discovered evidence," it is too late. New trial motions have to be filed within fourteen days of a verdict. Fed. R. Crim. P. 33(b)(2). I extended that time until August 11, 2019. Defendant's motion is therefore too late.

If the motion is a motion for judgment of acquittal, and it does not claim to be that, it too would have to meet the fourteen-day requirement. Fed. R. Crim. P. 29(c)(1). It does not do so.

I do not think Defendant can file motions that relate to pretrial or trial proceedings long after trial, in the absence of any basis in the rules to do so, no matter how he captions them. Thus, I deny the motion as untimely.

I note that the motion is based on the assertion that the search warrant was fictitious. Defendant raised that issue before trial, and I resolved it then. Assuming that there is some basis in the rules that would permit me to reexamine that decision now, I see no error in my earlier rulings.

<u>Motion to Compel (D.I. 168)</u>

By virtue of this opinion, the motion to compel is now moot, and I will dismiss it.

Thus, the motion for judgment of acquittal (D.I. 150), the motion for a new trial (D.I. 149), and the motion to dismiss (D.I. 159) are **DENIED**. The motion to compel (D.I. 168) is **DISMISSED** as moot.

IT IS SO ORDERED this 2nd day of June 2020.

                                                                                          __/s/ Richard G. Andrews____
                                                                                          United States District Judge